**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,                                          :
                                                      :
        Plaintiff,                                  : Civil Action No. 22-cv-1944
                                                      :
v.                                                    : **COMPLAINT FOR VIOLATIONS OF**
                                                      : **SECTIONS 14(a) AND 20(a) OF THE**
CEDAR REALTY TRUST, INC., BRUCE J.                    : **SECURITIES EXCHANGE ACT OF**
SCHANZER, GREGG A. GONSALVES,                         : **1934**
ABRAHAM EISENSTAT, STEVEN G.                          :
ROGERS, SABRINA L. KANNER, DARCY                      : **JURY TRIAL DEMANDED**
D. MORRIS, RICHARD H. ROSS, and                       :
SHARON STERN,                                         :
                                                      :
        Defendants.                                 :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Cedar Realty Trust, Inc. ("Cedar Realty Trust or the "Company") and the members Cedar Realty Trust's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Cedar Realty Trust by affiliates of Wheeler Real Estate Investment Trust, Inc. ("Wheeler")

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on April 5, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the WHLR Merger Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of Wheeler, will merge with and into Cedar Realty Trust with Cedar Realty Trust as the surviving entity. Wheeler will also acquire the Company's assets through Wheeler's wholly owned subsidiary, WHLR OP Merger Sub LLC ("OP Merger Sub"), whereby OP Merger Sub will merge with and into Cedar Realty Trust Partnership, L.P., an entity through which the Company conducts substantially all of its business and owns substantially all of its assets (the "Operating Partnership") (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 2, 2022 (the "Merger Agreement"), each Cedar Realty Trust stockholder will receive approximately $29.00 in cash (the "Merger Consideration") for each Cedar Realty Trust share owned.

1. As discussed below, Defendants have asked Cedar Realty Trust's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Jones Lang LaSalle Securities, LLC ("JLL") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cedar Realty Trust's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants reside in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of Cedar Realty Trust stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant Bruce J. Schanzer has served as a member of the Board since June 2011 and is the Company's President and Chief Executive Officer of the Company.

9. Individual Defendant Abraham Eisenstat has served as a member of the Board since July 2015.

10. Individual Defendant Gregg A. Gonsalves has served as a member of the Board since 2017 and as Chairman of the Board since January 2021.

11. Individual Defendant Steven G. Rogers has served as a member of the Board since March 2016.

12. Individual Defendant Sabrina L. Kanner has served as a member of the Board since June 2018.

13. Individual Defendant Darcy D. Morris has served as a member of the Board since April 2021.

14. Individual Defendant Richard H. Ross has served as a member of the Board since April 2021.

15. Individual Defendant Sharon Stern has served as a member of the Board since April 2021.

16. Defendant Cedar Realty Trust is a Maryland corporation and maintains its principal offices at 928 Carmans Road, Massapequa, New York 11758. The Company's stock trades on the New York Stock Exchange under the symbol "CDR."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

19. Cedar Realty Trust is a fully-integrated real estate investment trust which focuses on the ownership, operation and redevelopment of grocery-anchored shopping centers in high-density urban markets from Washington, D.C. to Boston. The Company's portfolio (excluding

4

properties treated as "held for sale") comprises 54 properties, with approximately 8.1 million square feet of gross leasable area.

20. On March 2, 2022, the Company announced the Proposed Transaction:

> MASSAPEQUA, N.Y., March 2, 2022 /PRNewswire/ -- Cedar Realty Trust (NYSE: CDR) (the "Company") today announced that following its previously announced dual-track review of strategic alternatives, it has entered into definitive agreements for the sale of the Company and its assets in a series of related all-cash transactions:
>
> - An agreement to sell a portfolio of 33 grocery-anchored shopping centers to a joint venture between a fund managed by DRA Advisors LLC and KPR Centers for $840.0 million.
> - An agreement to sell the Revelry redevelopment project for $34.0 million. Cedar is negotiating the sale of the Northeast Heights redevelopment project for $46.5 million. (In the event the sale of the redevelopment projects is not completed prior to closing of the grocery-anchored shopping center portfolio sale, the DRA-KPR joint venture has agreed to acquire these two projects at the aggregate price of $80.5 million.)
> - An agreement to sell the Company and its remaining assets to Wheeler Real Estate Investment Trust, Inc. (NASDAQ: WHLR), after completion of the above-described transactions, in an all-cash merger transaction that values the assets at $291.3 million.
>
> The transactions, which were unanimously approved by the Company's Board of Directors, are estimated to generate total net proceeds, after all transaction expenses, of more than $29.00 per share in cash, which will be distributed to shareholders upon completion. The $29.00 per share of estimated net proceeds represent a 16.6% premium to Cedar's closing share price on March 2, 2022, and a 70.6% premium to the Company's closing share price on September 9, 2021, the last day of trading prior to the announcement of the dual-track review of strategic alternatives.
> "We believe this combination of transactions represents the best possible outcome for our common shareholders and we are very pleased with the progress thus far of our dual-track review of strategic alternatives," said Bruce Schanzer, Cedar's President and Chief Executive Officer.
>
> Upon completion of the transactions, Cedar will be wholly owned by Wheeler Real Estate Investment Trust, and Cedar's common

stock will no longer be publicly traded. Pursuant to the terms of the merger agreement with Wheeler, all shares of Cedar's currently outstanding 7.25% Series B Preferred Stock and 6.50% Series C Preferred Stock, will remain outstanding shares of Cedar preferred stock following the merger and will remain listed on the New York Stock Exchange under their current ticker symbols.

The transactions are not subject to financing conditions and are expected to close by the end of the second quarter of 2022, subject to satisfaction of customary closing conditions, including approval by Cedar's common shareholders.

BofA Securities and JLL Securities are acting as financial advisors to Cedar, and Goodwin Procter LLP is acting as legal counsel to Cedar. JLL is acting as the Company's real estate advisor with respect to the sale of the grocery-anchored shopping center portfolio and CBRE is acting as real estate advisor to Cedar with respect to the sale of the redevelopment projects.
stock will no longer be publicly traded. Pursuant to the terms of the merger agreement with Wheeler, all shares of Cedar's currently outstanding 7.25% Series B Preferred Stock and 6.50% Series C Preferred Stock, will remain outstanding shares of Cedar preferred stock following the merger and will remain listed on the New York Stock Exchange under their current ticker symbols.

The transactions are not subject to financing conditions and are expected to close by the end of the second quarter of 2022, subject to satisfaction of customary closing conditions, including approval by Cedar's common shareholders.

BofA Securities and JLL Securities are acting as financial advisors to Cedar, and Goodwin Procter LLP is acting as legal counsel to Cedar. JLL is acting as the Company's real estate advisor with respect to the sale of the grocery-anchored shopping center portfolio and CBRE is acting as real estate advisor to Cedar with respect to the sale of the redevelopment projects.

\* \* \*

21. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Cedar Realty Trust's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

22. On April 5, 2022, Cedar Realty Trust filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

6

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. The Proxy Statement fails to provide material information concerning financial projections by Cedar Realty Trust management and relied upon by JLL in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and JLL with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Cedar Realty Trust management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Net Operating Income, EBITDA, Funds From Operations ("FFO"), and FFO per share, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

28. The Proxy Statement also fails to disclose the Company's standalone, unlevered, after-tax free cash flows ("UFCF") that it was forecasted to generate during the twelve-month periods ending December 31, 2022 through December 31, 2029. The UFCF was used in JLL's

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Discounted Cash Flow Analysis* and its omission renders the Proxy Statement false and misleading.

<u>Omissions and/or Material Misrepresentations Concerning Financial Analyses</u>

29. With respect to JLL's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's standalone, unlevered, after-tax free cash flows that it was forecasted to generate during the twelve-month periods ending December 31, 2022 through December 31, 2029; (ii) the terminal values for Cedar Realty Trust; (iii) the inputs and assumptions underlying the use of a range of perpetuity growth rates from 1.1% to 1.6%; and (iv) the inputs and assumptions underlying the use of the range of discount rates of 6.8% to 7.3%.

30. With respect to JLL's *Comparable Public Companies Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the companies observed by JLL in the analysis.

31. With respect to JLL's *Selected Precedent Public REIT Mergers and Acquisitions Transaction ("M&A") Transaction Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the transactions observed by JLL in the analysis, including the premiums paid to the target companies' unaffected stock price, and premiums (or discounts) paid to the target companies' net asset value for each transaction selected and observed by JLL in the analysis.

32. With respect to JLL's *Selected Portfolio-Level Transaction Analysis*, the Proxy Statement fails to disclose: (i) the transactions selected; (ii) the individual financial metrics for the transactions observed by JLL in the analysis.

33. With respect to the engagement of JLL as the Company's financial advisor, the Proxy Statement fails to disclose the fees received in connection with JLL's past services rendered on behalf of Cedar and the Grocery-Anchored Purchasers.

34. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Cedar Realty Trust within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Cedar Realty Trust, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cedar Realty Trust, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cedar Realty Trust, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 5, 2022           **MELWANI & CHAN LLP**

                  By: */s/ Gloria Kui Melwani*
                     Gloria Kui Melwani
                     1180 Avenue of the Americas, 8th Fl.
                     New York, NY 10036
                     Telephone: (212) 382-4620
                     Email: gloria@melwanichan.com

                     *Attorneys for Plaintiff*